1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11   TYRONE HENRY,                 )
                                   )
12                Plaintiff,       )
                                   )      No.  CV-06-712-HU
13        v.                       )
                                   )
14   PORTLAND DEVELOPMENT COMMIS-  )
     SION, LORI SUNDSTROM, and     )      FINDINGS & RECOMMENDATION
15   BRUCE WARNER,                 )
                                   )
16                Defendants.      )
     ──────────────────────────────)
17
     Tom Steenson
18   Zan Tewksbury
     STEENSON, SCHUMANN, TEWKSBURY, CREIGHTON & ROSE, P.C.
19   500 Yamhill Plaza Building
     815 S.W. Second Avenue
20   Portland, Oregon 97204

21        Attorneys for Plaintiff

22   Clarence M. Belnavis
     Heidi Guettler
23   FISHER & PHILLIPS LLP
     111 S.W. Fifth Avenue, Suite 1250
24   Portland, Oregon 97204

25        Attorneys for Defendants

26   HUBEL, Magistrate Judge:

27        Plaintiff Tyrone Henry brings this employment-related action

28   against his former employer, the Portland Development Commission

     1 - FINDINGS & RECOMMENDATION

(PDC), and two of its managerial employees, Lori Sundstrom and Bruce Warner.  In his Amended Complaint, plaintiff brings claims, explained in more detail below, pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, Oregon Revised Statute § (O.R.S.) 659A.030, and a common law wrongful discharge claim under state law.

Defendant moves to dismiss the section 1981 and wrongful discharge claims.  I recommend that the motion be denied as to the section 1981 claim and granted as to the wrongful discharge claim.

Following oral argument on the motion to dismiss, plaintiff moved to amend his Amended Complaint to add a Title VII claim. That motion is now fully briefed.  I recommend that the motion to amend be denied.

BACKGROUND

The facts are taken from the Amended Complaint.  Plaintiff is African-American and a former employee of the PDC.  Sundstrom is the PDC's Executive Officer.  Warner is the PDC's Executive Director.  The individual defendants are sued in their individual and official capacities and are alleged to have acted within the course and scope of their employment.

Plaintiff was hired by the PDC as a Contract Compliance Manager. He was charged with ensuring that women and minorities are represented in the allocation of project contracts.  In July 2005, Warner became PDC's Executive Director and in November 2005, Warner hired Sundstrom to be the PDC's Executive Officer.  At that time, she became plaintiff's direct supervisor.

Plaintiff alleges that Sundstrom began "micro-managing, unfairly criticizing, and harassing" plaintiff almost immediately. In early November 2005, a "Diversity" group meeting was held and a

2 - FINDINGS & RECOMMENDATION

1    subsequent memorandum was presented to Warner, highlighting areas

2    in which members of the group believed PDC could improve its

3    treatment of minorities in the workplace and the community.

4    Plaintiff attended the meeting and was a party to the memorandum.

5    Warner assigned Sundstrom the responsibility of addressing the

6    complaints plaintiff and the others had expressed.

7        Following these complaints, Sundstrom allegedly increased her

8    micro-management, unfair criticism, and harassment of plaintiff.

9    Eventually, plaintiff contends, Sundstrom falsely accused plaintiff

10   of insubordination and terminated or caused his termination in

11   early March 2006. Plaintiff contends that Warner either knew or

12   should have known of, or otherwise ratified, Sundstrom's

13   discrimination and/or retaliation against plaintiff.

14       Plaintiff contends that there is a pattern and practice of

15   racial discrimination at PDC and similarly, a pattern and practice

16   of retaliation against those who oppose racial discrimination in

17   the workplace.

18                              STANDARDS

19   I.  Motion to Dismiss

20       On a motion to dismiss, the court must review the sufficiency

21   of the complaint. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

22   The court should construe the complaint most favorably to the

23   pleader:

24           In appraising the sufficiency of the complaint, we
             follow, of course, the accepted rule that the complaint
25           should not be dismissed for failure to state a claim
             unless it appears beyond doubt that the plaintiff can
26           prove no set of facts in support of his claim which would
             entitle him to relief.
27

28   <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>American Family Ass'n,</u>

3 - FINDINGS & RECOMMENDATION

1  Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th

2  Cir. 2002).   The allegations of material fact must be taken as

3  true.  Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994).

4  II.  Motion to Amend

5       Federal Rule of Civil Procedure 15(a) provides that leave to

6  amend a complaint "shall be freely given when justice so requires."

7  The court should apply the rule's "policy of favoring amendments

8  with extreme liberality." DCD Programs, Ltd. v. Leighton, 833 F.2d

9  183, 186 (9th Cir. 1987) (internal quotation omitted).    In

10 determining whether to grant a motion to amend, the court should

11 consider bad faith, undue delay, prejudice to the opposing party,

12 futility of amendment, and prior amendments to the complaint.

13 Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355-56

14 (9th Cir. 1996).

15                          DISCUSSION

16      Plaintiff's section 1983 claim alleges a violation of his

17 First Amendment rights.  He contends that the conduct directed at

18 him was in retaliation for his protected speech about a matter of

19 public concern, that is, racial discrimination and lack of

20 diversity at PDC and in the community.  Although plaintiff does not

21 expressly state that this claim is brought against all three

22 defendants, his allegations in support of this claim refer to

23 "defendants'" conduct.  Am. Compl. at ¶¶ 21, 22.  Thus, I construe

24 this claim as being brought against both of the individual

25 defendants as well as the PDC.

26      In his section 1981 claim, he contends that the PDC impaired

27 his employment contract rights on the basis of race.  Plaintiff

28 does not expressly state if this claim is brought against only the

4 - FINDINGS & RECOMMENDATION

1    PDC. However, because the allegations in support of this claim are
2    directed solely at the PDC, I construe the claim as being limited
3    to the PDC. Id. at ¶ 27.

4        His O.R.S. 659A.030 alleges race discrimination and
5    retaliation claim under Oregon law. The wrongful discharge claim
6    is based on a theory that the discharge was wrongful because it
7    frustrated the important public interest of eliminating workplace
8    racial discrimination. As with the section 1981 claim, plaintiff
9    does not expressly state that these claims are brought against only
10   the PDC but again, because the allegations are directed solely at
11   the PDC, I construe these two claims as being limited to the PDC.
12   Id. at ¶¶ 31, 34.

13   I.  Motion to Dismiss

14       A.  Section 1981 Claim

15       Defendant moves to dismiss the section 1981 claim because,
16   defendant argues, plaintiff fails to allege that the violation of
17   his section 1981 rights occurred because of a policy or custom of
18   the PDC. Defendant correctly asserts that plaintiff's claim must
19   contain such an allegation. Federation of African Am. Contractors
20   v. City of Oakland, 96 F.3d 1204, 1215 (9th Cir. 2006) (amendments
21   to section 1981 in the Civil Rights Act of 1991, which allowed a
22   direct cause of action against state actors under section 1981, did
23   not impose respondeat superior liability, but preserved the
24   traditional "policy or custom" requirement).

25       The problem with defendant's argument, however, is that in
26   paragraph fifteen of the Amended Complaint, plaintiff alleges that
27   "there is a pattern and practice of racial discrimination at PDC
28   and similarly, a pattern and practice of retaliation against those

5 - FINDINGS & RECOMMENDATION

who oppose racial discrimination in the work place." Am. Compl. at ¶ 15. While this allegation is not contained in the section of the Amended Complaint bringing the section 1981 claim, the first paragraph of the section 1981 claim, paragraph twenty-six, states that "[a]s applicable, Henry realleges the above." Id. at ¶ 26.

Federal Rule of Civil Procedure 8(a)(2) requires the allegations in the complaint to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quotation omitted). Given the liberal notice pleading rules in federal court, the policy or custom allegations in the Amended Complaint meet that requirement.

B.  Wrongful Discharge Claim

Defendant argues that the wrongful discharge claim is precluded by the remedies for the section 1981 and section 1983 claims. I agree.

1.  Generally

In almost every employment case where a plaintiff brings both a common-law wrongful discharge claim and a statutory claim based on the same or similar conduct by the defendant, the court is called upon to decide whether the statutory claim precludes the wrongful discharge claim. Thus, every judge in this Court has had occasion to address the question, in regard to a variety of statutes. There is no shortage of decisions on the issue.

An abundance of opinions, however, does not guarantee consistency; perhaps it even fosters inconsistency. The wrongful discharge claim preclusion issue has proved to be especially vexing over the years. For example, while most of the judges in this

6 - FINDINGS & RECOMMENDATION

1   Court conclude that Title VII does not preclude a wrongful
2   discharge claim, that was not always the prevailing view. <u>See</u>,
3   <u>e.g.</u>, <u>Byer v. Oregonian Publ'g Co.</u>, No. CV-97-1170-KI, Opinion (D.
4   Or. Nov. 9, 1998) (Title VII does not preclude a wrongful discharge
5   claim); <u>Kent v. Liberty Nw. Ins. Corp.</u>, No. CV-98-635-JE, Findings
6   & Recommendation (D. Or. Sept. 18, 1998) (same), adopted by Judge
7   Jones (D. Or. Dec. 7, 1998); <u>Hodges v. Trailblazers, Inc.</u>, No. CV-
8   96-148-AS, Findings & Recommendation (D. Or. Aug. 28, 1996)
9   (renouncing prior contrary holding and concluding Title VII claim
10  did not preclude wrongful discharge claim), adopted by Judge Jones
11  (D. Or. Jan. 27, 1997); <u>Jorgenson v. Fred Meyer, Inc.</u>, No. CV-95-
12  1861-HA, Opinion (D. Or. May 9, 1996) (noting that the most recent
13  decisions within the district have held that Title VII does not
14  preclude a wrongful discharge claim); <u>Coleman v. Pig n' Pancake,</u>
15  <u>Inc.</u>, No. CV-94-405-ST, Opinion (D. Or. Jan. 22, 1996) (renouncing
16  prior contrary holding and concluding Title VII claim did not
17  preclude wrongful discharge claim); <u>Russell v. Bob Frink Chevrolet,</u>
18  <u>Inc.</u>, No. CV-95-252-PA, Opinion (D. Or. Sept. 8, 1995) (Title VII
19  does not preclude a wrongful discharge claim).

20      Moreover, although for a time the issue appeared settled, some
21  recent decisions have reached a contrary conclusion regarding the
22  preclusive effect of Title VII on a common law wrongful discharge
23  claim. <u>E.g.</u>, <u>Garcia v. Liberty Homes</u>, No. CV-05-31-PK, Findings &
24  Recommendation (D. Or. Mar. 9, 2006) (concluding that Title VII
25  claim preempted wrongful discharge claim when claims premised upon
26  the same conduct) (converted to Opinion on March 22, 2006, after
27  all parties consented to entry of final judgment by a Magistrate
28  Judge in accordance with Federal Rule of Civil Procedure 73 and 28

7 - FINDINGS & RECOMMENDATION

U.S.C. § 636(c)); <u>Ovchinikov v. Oak Valley Auto Sales & Leasing</u>, No. CV-03-905-AA, 2004 WL 2889771, at *9 (D. Or. Dec. 13, 2004) (concluding that plaintiff's claims under "federal and state law," which included Title VII and state statutory discrimination claim, precluded wrongful discharge claim when premised on identical allegations).[1]

The lack of uniformity is not limited to whether Title VII precludes wrongful discharge claims. In analyzing whether a state statutory claim under Oregon Revised Statute § (O.R.S.) 652.355, which prohibits discharging an employee for having made a wage claim, Judge Redden held, contrary to a decision reached by the Oregon Court of Appeals, that the statute did not preclude a common law wrongful discharge claim. <u>Nash v. Resources, Inc.</u>, No. CV-96-1643-RE, 1997 WL 594472, at *3 (D. Or. Apr. 2, 1997). Judge Brown later came to the same conclusion. <u>Marshall v. May Trucking Co.</u>, No. CV-03-23-BR, 2004 WL 1050870, at *5-7 (D. Or. Apr. 6, 2004). But, Judge Stewart came to a different conclusion in a 2005 Opinion. <u>Paugh v. King Henry's, Inc.</u>, No. CV-04-763-ST, 2005 WL 1565112, at *5-7 (D. Or. June 30, 2005) (remedies available under O.R.S. 652.355 are "adequate to compensate for the personal nature of the injury done to a wrongfully discharged employee for reporting and resisting a wage and hour law violation").

One of the reasons for noting these conflicting opinions is to illustrate the basis for my agreement with Judge Coffin's expression that the question of whether a terminated employee can

---

[1]  Notably, neither <u>Garcia</u> nor <u>Ovchinikov</u> cite any prior decision by this Court on the preclusive effect of Title VII on a state common law wrongful discharge claim.

bring a wrongful discharge claim is "a gnarly one." <u>Farrington v.</u> <u>Pepsi-Cola Bottling Co.</u>, No. CV-03-6297-TC, 2004 WL 817356, *2 (D. Or. Feb. 25, 2004). Because, as Judge Coffin noted, Oregon courts have been "grappling" with the issue for almost thirty years, and as a result so has this Court, divining the appropriate preclusion analysis has been challenging.

In a 1998 decision, Judge Stewart undertook a comprehensive review of the relevant cases and noted that in Oregon, the tort of wrongful discharge is designed to "serve as a narrow exception to the at-will employment doctrine in certain limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct." <u>Draper v. Astoria Sch. Dist. No. IC</u>, 995 F. Supp. 1122, 1127 (D. Or. 1998), <u>abrogated in part on other</u> <u>grounds</u>, <u>Rabkin v. Oregon Health Sci. Univ.</u>, 350 F.3d 967 (9th Cir. 2003). The tort "never was intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question was unacceptable and no other remedy was available." <u>Id.</u> at 1128.

Following these remarks, Judge Stewart then concluded that "until the Oregon Supreme Court clarifies the governing standards[,]"

> a claim for common law wrongful discharge is not available in Oregon if (1) an existing remedy adequately protects the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate).

<u>Id.</u> at 1130-31. Many judges in this district, including myself, have followed this analysis. <u>E.g.</u>, <u>Wilson v. Southern Or. Univ.</u>,

9 - FINDINGS & RECOMMENDATION

No. CV-06-3016-CO, Findings & Recommendation at p. 5 (D. Or. Aug. 24, 2006); <u>Allen v. Oregon Health Sci. Univ.</u>, No. CV-06-285-BR, 2006 WL 2252577, at *2 (D. Or. Aug. 4, 2006); <u>Halbasch v. Med-Data, Inc.</u>, No. CV-98-882-HU, 1999 WL 1080702, at *2 (D. Or. Aug. 4, 1999).

Recently, Judge Stewart again reviewed the status of the law in Oregon regarding the preclusion issue. <u>Cantley v. DSMF, Inc.</u>, 422 F. Supp. 2d 1214, 1222 (D. Or. 2006). She concluded that the Oregon Supreme Court had still not clarified its governing standards and thus, she adhered to her previous analysis as articulated in <u>Draper</u> to resolve the question presented in <u>Cantley</u> which concerned the preclusive effect of O.R.S. 654.062(5). <u>Id.</u>

I find Judge Stewart's review of the law, both in <u>Draper</u> and in <u>Cantley</u>, persuasive. I adopt her analysis and thus, for the purposes of this motion, I examine whether the existing remedies available to plaintiff in his section 1981 and section 1983 claims adequately protect the public interest in question, or whether Congress has intentionally abrogated the common law remedies by establishing an exclusive remedy.

2. Section 1981

Among the dozens of decisions analyzing the wrongful discharge preclusion issue, the parties cite only three expressly addressing the preclusive effect of a section 1981 claim. I have found no others.

Defendant relies on a February 2006 opinion by Judge Aiken which held that section 1981 provided adequate remedies for purposes of plaintiff's wrongful discharge claim. <u>Lawrence v. Louis & Co.</u>, No. CV-05-1651-AA, 2006 WL 278194, at *1 (D. Or. Feb.

10 - FINDINGS & RECOMMENDATION

1, 2006).   The plaintiff in the case conceded that section 1981 provided adequate remedies for the purposes of wrongful discharge, but argued that his wrongful discharge claim was based on different operative facts.   Judge Aiken concluded that all of plaintiff's claims were based on the same operative facts and thus, she dismissed the wrongful discharge claim.   Id.

Judge Haggerty recently relied on Lawrence in concluding that the plaintiff's section 1981 claim precluded the plaintiff's common law wrongful discharge claim.   Williams v. Home Depot U.S.A., Inc., No. CV-04-1377-ST, Order on Reconsideration (D. Or. June 6, 2006).[2]

Plaintiff relies on Cox. v Vanport Paving, Inc., No. CV-05-527-HU, 2006 WL 1582302 (D. Or. June 2, 2006) (Order by Judge Haggerty adopting Supplemental and Amended Findings & Recommendations).   There, Judge Haggerty followed the reasoning in his April 13, 2006 decision in Williams in discussing the preclusion issue.   Id. at *6.   As noted in footnote 2, that April decision is no longer good law regarding the relationship between a section 1981 claim and a wrongful discharge claim.   Additionally, because Cox did not involve a section 1981 claim, any discussion regarding section 1981 is dicta.

Plaintiff argues that the operative facts in support of the

---

[2]   In the initial briefing, plaintiff relied on Judge Haggerty's April 13, 2006 Opinion in Williams in which he concluded that the wrongful discharge claim was not precluded by the plaintiff's Title VII, section 1981, or Oregon statutory law claims.   2006 WL 1005076, at *7.   After the briefing was concluded, plaintiff's counsel appropriately alerted the court to the later order granting the defendant's motion to reconsider the conclusion in regard to the section 1981 claim's preclusive effect on the wrongful discharge claim.

section 1981 and wrongful discharge claims are distinct, making preclusion inappropriate. Plaintiff notes that the section 1981 claim is for impairment of his contract rights, while the wrongful discharge claim is for frustration of an important public purpose.

This is a distinction without a difference. While the claims involve different legal theories, they both are based on plaintiff's allegation that he was terminated because of his race or his opposition to race discrimination. His "contract rights" were "impaired" by being terminated, "on the basis of race." Am. Compl. at ¶ 27. His discharge was wrongful because it was based on race. Id. at ¶ 31. The facts in support of the two claims are overlapping.

Next, plaintiff contends that, based on a 2006 Oregon Court of Appeals case, to successfully preclude a wrongful discharge claim, defendant must show not only that the remedies are adequate, but that the legislature intended to abrogate any common law remedy for damages. Olsen v. Deschutes County, 204 Or. App. 7, 127 P.3d 655, rev. denied, 341 Or. 80, 136 P.3d 1123 (2006). Plaintiff argues that defendants have failed to make that showing here.

I reject this argument. In articulating that to succeed on a preclusion argument a "defendant must demonstrate both that the remedy for violation of ORS 659.035 is adequate in comparison to the remedy available under a common-law tort action and also that the legislature intended the statute to abrogate the common law[,]" the Olsen court cited the same cases Judge Stewart cited in Draper and Cantley. Compare Olsen, 204 Or. App. at 13-14, 127 P.3d at 659-60 (citing Walsh v. Consolidated Freightways, 278 Or. 347, 563 P.2d 1205 (1977); Dunwoody v. Handskill Corp., 185 Or. App. 605, 60

12 - FINDINGS & RECOMMENDATION

1   P.3d 1135 (2003); <u>Brown v. Transcon Lines</u>, 284 Or. 597, 588 P.2d

2   1087 (1978); <u>Holien v. Sears, Roebuck & Co.</u>, 298 Or. 76, 689 P.2d

3   1292 (1984)); <u>with</u> <u>Draper</u>, 995 F. Supp. at 1127-30 (citing, <u>inter</u>

4   <u>alia</u>, <u>Walsh</u>, <u>Brown</u>, and <u>Holien</u>); <u>and</u> <u>Cantley</u>, Findings &

5   Recommendation at pp. 8-12 (citing, <u>inter alia</u>, <u>Walsh</u>, <u>Brown</u>,

6   <u>Holien</u>, and <u>Dunwoody</u>).

7       While the <u>Olsen</u> court relied on these cases to conclude that

8   the analysis was conjunctive, meaning that a wrongful discharge

9   claim is precluded only if the remedies are adequate <u>and</u> there is

10  a legislative intent to abrogate the common law, Judge Stewart

11  relied on these cases to conclude that the proper analysis was

12  disjunctive, meaning that the wrongful discharge claim is precluded

13  if the remedies are adequate <u>or</u> the legislature has intentionally

14  abrogated the common law remedies by establishing an exclusive

15  remedy.

16      A federal court is not bound by the decisions of a state

17  intermediate appellate court if it determines that the state's

18  highest court would reach a different conclusion. <u>McCubbrey v.</u>

19  <u>Veninga</u>, 39 F.3d 1054, 1055 (9th Cir. 1994). Here, the Oregon

20  Supreme Court, as demonstrated by the discussion in <u>Draper</u> and

21  <u>Cantley</u>, has not conclusively spoken on this issue. I conclude

22  that Judge Stewart's analysis is more consistent with what the

23  Oregon Supreme Court would do with this issue.

24      Moreover, as <u>Olsen</u> itself recognizes, when a statute is silent

25  with respect to the legislature's intent and an explicit statement

26  is absent, "the existence of adequate remedies can be seen

27  implicitly to establish exclusivity." <u>Olsen</u>, 204 Or. App. at 16,

28  127 P.3d at 661. Given that section 1981 was originally enacted as

13 - FINDINGS & RECOMMENDATION

section 1 of the Civil Rights Act of 1866, <u>Domino's Pizza, Inc. v.</u>
<u>McDonald</u>, 126 S. Ct. 1246, 1249 (2006), and Oregon did not
recognize a common law claim for wrongful discharge until 1975 in
<u>Nees v. Hocks</u>, 272 Or. 210, 536 P.2d 512 (1975), it is not
surprising that section 1981 fails to express an intent to abrogate
or to preserve common law wrongful discharge claims.[3]

The remaining issue is whether the remedies provided by
section 1981 are indeed adequate. Remedies for a section 1981
employment-related claim include equitable relief, backpay, and
compensatory damages. <u>Johnson v. Railway Express Agency, Inc.</u>, 421
U.S. 454, 459-60 (1975). Prevailing plaintiffs in a section 1981
claim are also entitled to attorney's fees and expert fees as part
of the attorney's fees. 42 U.S.C. § 1988.

Punitive damages are unavailable against a municipality in a
section 1981 claim. <u>See</u> <u>City of Newport v. Fact Concerts, Inc.</u>,
453 U.S. 247, 271 (1981) (punitive damages not available against a
municipality in a section 1983 action); <u>Bell v. City of Milwaukee</u>,
746 F.2d 1205, 1270 (7th Cir. 1984) (applying holding of <u>City of</u>
<u>Newport</u> to section 1981 claims), <u>overruled on other grounds</u>, <u>Russ</u>
<u>v. Watts</u>, 414 F.3d 783, 791 (7th Cir. 2005). But, they are also
unavailable against a public employer in a common law wrongful
discharge claim. <u>Olsen</u>, 204 Or. App. at 15 n.4, 127 P.3d at 660
n.4.

---

[3] As Judge Stewart noted in <u>Draper</u>, "[i]f an intent to
abrogate was the only standard, then every statutory remedy in
existence in 1975 fails the test." 995 F. Supp. at 1128. Thus,
she explained, the "legislative intent" test articulated in
<u>Brown</u>, 284 Or. at 610, 588 P.2d at 1093-94, "must apply solely to
a 'new remedy' created by a statute that post-dates the
establishment of the wrongful discharge tort in 1975." <u>Id.</u>

14 - FINDINGS & RECOMMENDATION

Given that the remedies available in the section 1981 claim are broader, due to the inclusion of attorney's fees, than those available for the wrongful discharge claim, I recommend concluding that the section 1981 claim precludes plaintiff's common law wrongful discharge claim.

3.  Section 1983

Several decisions in this district have concluded that a section 1983 claim precludes a common law wrongful discharge claim when the claims are based on the same operative facts. E.g., Baynton v. Wyatt, 411 F. Supp. 2d 1223, 1225 (D. Or. 2006) (noting that the plaintiff's remedy under section 1983 was the same, if not better, than under her section 1983 claim); Carlton v. Marion County, No. CV-03-6202-AA, 2004 WL 1442598, at *4 (D. Or. Feb. 19, 2002) (section 1983 claim precluded wrongful discharge claim, even after plaintiff withdrew section 1983 claim because it sought to remedy the same conduct as the wrongful discharge claim and would have provided plaintiff with an adequate remedy); Minter v. Multnomah County, No. CV-01-352-ST, 2002 WL 31496404, at *14 (D. Or. May 10, 2002) (section 1983 claim precluded wrongful discharge claim and provided more generous damages by allowing attorney's fees and where the Oregon Tort Claims Act's cap on damages for awards against public bodies did not apply), adopted by Judge Haggerty (D. Or. June 29, 2002); Draper, 995 F. Supp. at 1126, 1131 (noting that under section 1983, a plaintiff can pursue a claim against individual defendants and may also seek punitive damages against them, remedies unavailable in a wrongful discharge claim; further noting that under Oregon law, individual supervisors are not liable on a wrongful discharge claim) (citing Schram v.

15 - FINDINGS & RECOMMENDATION

1    Albertson's, Inc., 146 Or. App. 415, 426-28, 934 P.2d 483, 490-91
2    (1997)).

3        I find the reasoning in these cases persuasive. Plaintiff
4    argues that these cases are distinguishable because here, the
5    section 1983 claim is based on separate facts from the facts
6    supporting the wrongful discharge claim. I disagree.

7        The section 1983 claim brought by plaintiff is based on First
8    Amendment retaliation. Plaintiff contends that his termination was
9    in retaliation for protected speech about a matter of public
10   concern - racial discrimination and lack of diversity. The
11   wrongful discharge claim is based on the same theory of retaliation
12   - that defendants wrongfully discharged him in retaliation for
13   complaints about race discrimination. Thus, although they present
14   different legal theories, the claims are based on the same
15   operative facts.

16       Next, plaintiff contends that his section 1983 claim may not
17   provide an adequate remedy where, for example, defendants may raise
18   the defense of qualified immunity which, if successful, would bar
19   plaintiff's claim against the individual defendants. But, as noted
20   above, plaintiff cannot bring a wrongful discharge claim against
21   the individual defendants in any event so the fact that that part
22   of the section 1983 claim might be resolved against plaintiff does
23   not extinguish a remedy that is otherwise available to plaintiff.

24       Additionally, as Judge King explained in Baynton, the
25   preclusion analysis does not require the court to determine the
26   merits of the claim, but rather, the court evaluates the claim to
27   determine if proven, it provides an adequate remedy. 411 F. Supp.
28   2d at 1225. Thus, in that case, he rejected the plaintiff's

16 - FINDINGS & RECOMMENDATION

argument that her remedy under section 1983 might be inadequate depending on the facts proven in each claim and the defenses raised. Id.

Judge Stewart rejected a similar argument in Minter. In response to the plaintiff's argument there that the wrongful discharge claim should be precluded only if she failed to prevail on her two statutory claims that afforded the same potential remedies, one of which was a section 1983 claim, Judge Stewart explained that

> [t]he problem with Minter's approach is that it first requires a court to rule on the merits of the other claims to determine if she has won or lost them, making it impossible to dismiss a wrongful discharge claim short of summary judgment or trial. Contrary to Minter's approach, inquiring into the adequacy of remedies as a matter of law does not first require a determination as to the merits of the claims. Instead, the only inquiry is whether an alternative claim, if proven, provides an adequate remedy.

Minter, 2002 WL 31496404, at *14.

Judge Stewart then clarified a statement she previously made in Draper which suggested that a qualified immunity defense may render the remedies of a section 1983 claim inadequate. Id. at *15. Draper noted that section 1983 might not always provide an adequate remedy in comparison with a wrongful discharge claim and suggested, as examples of when that might occur, a section 1983 claim against a private employer or a claim barred by qualified immunity. Draper, 995 F. Supp. at 1131.

In Minter, Judge Stewart pointed out that the examples posed in Draper "first require[d] a determination on the merits, such as whether a private employer acted jointly with a state actor or whether a constitutional violation occurred." Minter, 2002 WL

17 - FINDINGS & RECOMMENDATION

1  31496404, at *15.  Instead, she concluded, the appropriate

2  "analysis must center on the adequacy of the remedy available under

3  another claim for the same alleged conduct."  Id.

4      Plaintiff's qualified immunity argument misses the mark

5  because it requires an analysis of the merits of the case rather

6  than the adequacy of the remedy available.  Moreover, as noted

7  above, the possibility of a qualified immunity defense in this case

8  does not affect the available remedies given that the defense

9  applies only to the individual defendants and they are not proper

10  defendants for the wrongful discharge claim.

11      I recommend concluding that the section 1983 claim precludes

12  plaintiff's common law wrongful discharge claim.

13  II.  Motion to Amend

14      Defendant raises only one argument in opposition to

15  plaintiff's motion to add a Title VII claim to his Amended

16  Complaint.  Defendant contends that the amendment is futile because

17  plaintiff failed to exhaust his administrative remedies before

18  filing the case.

19      Plaintiff does not dispute that the law requires him to

20  exhaust his administrative remedies before filing a Title VII

21  claim.  Pltf's Reply at p. 1 ("Plaintiff is well aware of the law

22  requiring him to exhaust his administrative remedies prior to

23  bringing a Title VII claim in court[.]").  See 42 U.S.C. § 2000e-

24  16(c) ("Within 90 days of receipt of notice of final action, . . .

25  taken by the Equal Employment Opportunity Commission . . . , or

26  after one hundred and eighty days from the filing of the initial

27  charge . . . . , an employee . . . , if aggrieved by the final

28  disposition of his complaint, or by the failure to take final

action on his complaint, may file a civil action as provided in section 2000e-5 of this title[.]").

There is also no dispute that plaintiff filed this action in this Court on May 16, 2006, and then filed an EEOC/BOLI complaint on or about May 18, 2006. Zan Tewksbury Aug. 16, 2006 Declr. at ¶ 4; Keith Hamner Aug. 28, 2006 Declr. at ¶ 2. Based on these facts, plaintiff argues that he has exhausted his administrative remedies because he filed his administrative complaint and has requested a "right to sue" letter, before seeking to add the Title VII claim to this action.

I recommend that plaintiff's argument be rejected. Exhaustion of administrative remedies includes pursuing an "administrative claim with diligence and in good faith." Greenlaw v. Garrett, 59 F.3d 994, 997 (9th Cir. 1994). "A plaintiff may not cut short the administrative process prior to its final disposition, for upon abandonment a claimant fails to exhaust administrative relief and may not thereafter seek redress from the courts." Id.; see also Charles v. Garrett, 12 F.3d 870, 874 (9th Cir. 1993) (exhaustion requires a complainant to cooperate during the 180-day period).

The Ninth Circuit, as well as other circuits, have held that the issuance of a right-to-sue letter is a prerequisite to filing a Title VII claim. E.g., O'Loghlin v. County of Orange, 229 F.3d 871, 876 (9th Cir. 2000) ("As a prerequisite to suit, . . . Title VII . . . require[s] the filing of a charge and the issuance of a right-to-sue letter."); Criales v. American Airlines, Inc., 105 F.3d 93, 95 (2d Cir. 1997) ("The prerequisites for a suit under Title VII include a timely filed administrative charge and timely institution of suit after receipt of a right-to-sue notice."); see

19 - FINDINGS & RECOMMENDATION

1  also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798-99 (1973)

2  ("[r]espondent satisfied the jurisdictional prerequisites to

3  federal action (i) by filing timely charges of employment

4  discrimination with the Commission and (ii) by receiving and acting

5  upon the Commission's statutory notice of the right to sue[.]").

6      Moreover, even if plaintiff could proceed to court before the

7  receipt of her right-to-sue letter, she could not do so before the

8  expiration of the 180-day period following the filing of her

9  administrative complaint because "[t]he EEOC has exclusive

10  jurisdiction over the claim for 180 days." EEOC v. Waffle House,

11  Inc., 534 U.S. 279, 291 (2002); EEOC v. W.H. Braum, Inc., 347 F.3d

12  1192, 1196 (10th Cir. 2003) (same); EEOC v. Board of Regents of

13  Univ. of Wis., 288 F.3d 296, 300 (7th Cir. 2002) (same).

14      Here, 180 days following the May 18, 2006 EEOC/BOLI filing is

15  approximately mid-November 2006.  Thus, plaintiff may not add a

16  Title VII claim to this action until at least that time.

17      Although O'Loghlin squarely stated that issuance of the right-

18  to-sue letter was a prerequisite to suit, an earlier Ninth Circuit

19  case suggested in a footnote that a Title VII complainant could

20  file an action before receiving the right-to-sue letter, "provided

21  there is not evidence showing that the premature filing precluded

22  the state from performing its administrative duties or that the

23  defendant was prejudiced by such filing." Edwards v. Occidental

24  Chem. Corp., 892 F.2d 1442, 1445 n.1 (9th Cir. 1990).  While the

25  Ninth Circuit law on this issue may be unclear, there is no

26  question that in this case, the 180-day period of exclusive EEOC

27  jurisdiction has not expired and thus, plaintiff's attempt to bring

28  the claim into the action at this point is premature and thus,

20 - FINDINGS & RECOMMENDATION

presently futile.  Accordingly, I recommend that plaintiff's motion to amend be denied.

CONCLUSION

I recommend that defendant's motion to dismiss (#6) be denied as to the dismissal of the section 1981 claim but granted as to the dismissal of the wrongful discharge claim.  I further recommend that plaintiff's motion to amend (#19) be denied.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due November 2, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due November 16, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this  18th  day of  October    , 2006.


/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

21 - FINDINGS & RECOMMENDATION